We have three argued cases this morning. The first is number 16-2103, Cobra International v. BCNY International, Inc., Mr. Kubrick. Now, I think the Courtroom Deputies advise you we only want to hear a rebuttal argument on the cross-appeal from one party. Mr. Kudler? Are we talking about the cross-appeal regarding summary judgment or sanctions? Any part of the cross-appeal. Oh, okay. Well, I'll begin with sanctions because I think it's shorter. BCNY filed a motion for sanctions more than 60 days after the District Court. I thought you were going to present the main appeal. Oh, I misunderstood. I thought we were only going to hear the cross-appeal. I guess I didn't hear you correctly. No, no. What I was saying is that with respect to the cross-appeal, we only want to hear a rebuttal argument from one party. So you should address the main appeal and you'll get your chance later to address the cross-appeal after they argue. I'm sorry. Let's start with the main appeal. BCNY has argued that following the deposition of the listed inventor in the patent, Alan Stone, in 2006, where it was revealed that he didn't have – he had limits in his knowledge about electrical circuits and logic circuits, that COBRA should have immediately gone to China to find the technician and have him listed as a co-inventor and go through that process and amend the complaint. I think we are pretty familiar with the facts. Okay. I guess – frankly, this is the first time I've done this and I'm not really sure what to present here, but I'm just going through. I guess – all right. Well, basically, the District Court said that it wasn't going to allow your amendment to the complaint to add this Chinese inventor. As I understand it, for two reasons. One, that you had delayed even before the certificate of correction. And second, that once you got the certificate of correction, there was also additional delay. And as I read it, there seemed to be two alternative theories that the District Court relied on to deny the amendment. So why don't you address whether those rulings were correct? Yeah, the District Court said that there was a 14-month delay measured from when they granted the motion for summary judgment on inventorship until we moved to amend the complaint. And they said there was no reason why we couldn't have simultaneously moved to amend the complaint while we were seeking correction, trying to find the inventor, and trying to get his name added to the patent. That's wrong as a matter of law, and we've cited two Federal Circuit cases to that effect. It's wrong because although, and we have a case right here that says that it's the Azure Networks case, that although the court's ruling gave the Chinese co-inventor an interest in the case, that's not enough for standing. You have to have exclusionary rights under the patent, and that doesn't happen until you become a patentee or listed as a co-inventor, which didn't happen until a year later when we went through the process of finding him in mainland China, getting the paperwork signed, going through the administrative correction process in the patent office. It took a full year until September of 2015 to do that. So the 14 months is simply wrong as a matter of law. Now, the second question you mentioned is what about from there until we filed? Weren't you aware in the Sketchers case, weren't you aware that this issue existed? We didn't consider it an issue until opposing counsel filed the motion for summary judgment because our position was that the Chinese inventor simply did the work of an ordinary technician. He was directed by Alan Stone, who was over in China guiding him. Alan Stone looked at the various prototypes he created, rejected several of them. Well, I find it odd that you would dismiss a case because you know you have no standing, and then you go out and you file a new suit against other defendants based on the same theory, the same patent, and it's done with this open question on standing. I'm not sure I'm following the timeline here. I mean, we had both cases pending. We did not see that there was an issue of standing because we felt, as I say, that based on what happened in 2006 in the deposition. But the judge heard arguments on the inventorship issues in the Sketchers case. I believe he did, yes. And it's a very basic tenet of patent law that you have to have the co-owners of the patent as parties to the suit. Well, as I say, as we had argued, we did not consider the Chinese technician to be a co-inventor. We thought he did the work of an ordinary technician, and he did not rise to the level of inventorship. And that was our position all along. And we finally had to address that when, in 2012, BCNY filed the motion for summary judgment on that. Then we actually made that argument. It wasn't until the judge granted that motion in the Florida case that we really had to say, okay, I guess we have to go find this fellow. But up to that point, we didn't feel that that was appropriate because he was not truly a co-inventor, which is why John Oldman, who filed the original patent application, didn't list him as a co-inventor because he felt that he was just doing the work of a technician because he was guided directly by Alan Stone, who was there with him. And he was just saying, okay, if you want this, then we'll do the circuit this way. And as I say, he was hit and miss trying to get it the way Alan Stone wanted it, but he finally had a prototype that met the description Alan Stone wanted. So he was guided at every step of the way. So he was just doing the work of a technician, and he was not really, in our view, doing any inventing. But what about the delay after you got the certificate of correction? And the district court seemed to be puzzled by why you didn't immediately move for leave to amend after you got the certificate of correction. Yes, Your Honor. Well, there were a couple of reasons there. One is the court had administratively closed the case, and they did that in December of 2014. So our understanding of administrative closure wasn't an effective stay of the case until certain issues were resolved in terms of finding the inventor and the rest of it. And there was nothing that we – I mean, you weren't supposed to file things until the court reopened the case. That was our understanding. But you could have asked the court to reopen the case as early – I assume as early as, say, March of 2015, right, when you actually had the assignment from Zhang to Panagia. You could have made a motion to reopen the case at that point. You moved much later to reopen the case. No, sir, I don't think that's true, because he wasn't added to the patent until September of 2015. Only when he was put on the patent did he have exclusionary rights. But you had both parties – since he had assigned his rights, you had all parties that would have had any exclusionary rights. If for some reason the certificate of correction wasn't granted, then you had already stoned on the patent. If it was granted, then you had Panagia – you'd had an assignment to Panagia, so Panagia was the owner of the patent. Why wasn't it sufficient as of March of 2015 to proceed with the case at that point? Well, he was assigning whatever rights he had, but at that point he was not a patentee. Well, your argument is that until you got the certificate of correction, you couldn't move to reopen. Because, yeah, exactly, because only at the moment he became a patentee did he have the exclusionary rights necessary to have standing. So if we had moved before that, you know, that motion could rightly have been dismissed because he didn't have standing to be a plaintiff until that moment in September of 2015 when he was actually put on the patent. But that still doesn't explain why you delayed after getting the certificate of correction. You could have, you know, the next day you could have moved to reopen the case and to amend the complaint to add this new owner. And you didn't do it for two months. Well, our view was that the court had closed the case at its own initiative and we were waiting for the court to decide when it wanted to reopen. Because the court knew we needed to do this and they had the case closed. I mean, the court could have at its own initiative reopened the case and say, okay, it's time to do this now. We were waiting for them to do that. But you even waited a month after the court reopened the case to file the amendment. I'm sorry, waited a month? The court reopened the case on October 13th. You didn't file your motion for leave to amend until November 18th. Yes, a scheduling status conference was scheduled at that time to discuss how to go forward. And in the past on a number of occasions, you know, pretty consistently, the court had always waited for the status conference where we would decide on the next step. And I thought at that point, you know, we would look into this issue, which would, you know, that seemed to be something to present at that time. So we didn't see that there was an urgent need. You know, we're going to have a status conference dealing with this anyway. We'll wait until that happens. And at the status conference, you know, the court said that it was going to require this and issued an order giving us 10 days to do it, which we complied with. That's the only time frame the court ever gave us to do this. It was following the status conference on November 8th of 2015 that the court ordered COBRA to file a motion to amend the complaint to add the co-inventor within 10 days, and we complied with that. And that's the only time frame the court ever gave us. But, you know, our view was. November 9th, I think, right? Oh, it was November, I have it as 8th. Maybe my handwriting isn't good. Maybe it was the 9th. I'm sorry. So it seems as though what's at issue here really, I mean, we don't have a 14-month delay. We have a delay of a few weeks, more or less, one way or the other, you know, depending on how we measure this in terms of the opening of the case and so on. But it seems in the case law I've looked at, the reason any delay like that matters is because of prejudice to the opposing party. And in those cases, it was because you were pretty much on the eve of trial. In this case, it was not even on the trial schedule. I mean, there was no trial date set. So there's really no prejudice in this 11-year-old case at that point to, you know, this little period of time doesn't seem to create any prejudice at all. On the other hand, dismissing the case, which the judge did after 10 years of litigation, is severely prejudicial to the plaintiff because, first of all, we have the statute of limitations on damages, you know, and we lose a big chunk of time there if we have to refile the case. So, I mean, that in itself. But you can refile the case, right? You can refile it only going back six years. You can't cover all the, you know, the years before that that are lost by the statute of limitations when you refile. So that seems severely prejudicial, not to mention just 10 years of fighting this case. So, I mean, you compare that to whatever supposed prejudice there could have been to defendants by waiting a few weeks for us to file this, you know, this motion to amend. It doesn't even seem the two can be compared. As I understand it, under Rule 16, the standard is good cause, not prejudice. Prejudice is one of the ingredients in the mix of what a court will look at to determine whether there's good cause. But the principal obligation on the part of the movement in that situation, I think, is to say here is the good reason for my need to amend when the amendment falls outside of the period indicated by the scheduling order, which, of course, this did. Well, I guess what I would say about that is the scheduling order had expired literally years before. We were not, you know, and there have been a number of filings in the case that could have been covered by the scheduling order, and no one on either side had moved to amend the scheduling order, and it was accepted as fine. I mean, there was no issue there.  that suddenly this is an issue to go back a few years and get an extension on the scheduling order when for other filings before that it wasn't. And in terms... You can only modify a scheduling order for good cause and upon the discretion of the judge, correct? That would be my understanding. I mean, you had to show good cause. And prejudice isn't the only factor that's considered here. It's reasonable diligence. It's whether you exercise reasonable diligence. And that goes back to my question to you about the Sketchers case, because you knew as far back as ten years ago that you had a problem with, well, at least three years prior to this coming up in this case. You knew you had an inventorship problem. I just don't understand why once you think you solved it and you had the certificate, you didn't go running back to court and saying, here it is, I'm moving out. Well, as I say, the case was still closed and we just were waiting for the court to reopen it. We just thought it would follow a natural course of events where the court knew that we would need to be amending the complaint and they would reopen the case and then we would go from there. So it didn't seem as though there was any reason to do anything other than simply... Well, it's really hard for me to accept an argument of reasonable diligence when you argue that it was up to the court to act, when really you're to take action and to move on behalf of your client and to take affirmative action in doing that, to exercise reasonable diligence. And you're arguing the court should... I was waiting for the court to take action. Well, it was the court that closed the case of their own initiative and we thought it was up to them to reopen it. I mean, we didn't ask them to close it, but they did and we thought that was a good idea. It just seemed as though there was not an issue there because the court would recognize this and reopen it in due course when the court felt it was appropriate. So I guess it just didn't seem to be an issue there. If the court feels a need that this needs to be done now, they'll reopen the case. And they did reopen the case on October 13th. So we have a time frame that the court was arguing of 14 months. It's really pared down to just maybe a few weeks or about a month. So the vast majority of this time frame that they were saying there was a lack of diligence on is simply not so. And does this small time frame really represent a lack of due diligence? Our feeling is it doesn't. I mean, you can define due diligence in different ways, but the case law I looked at was pretty much about being on the eve of trial and this delay mattered there. In this case, it's not on the trial calendar, so it just didn't seem as though there was an issue for such a short time frame. So that was our position. And as I say, we waited for the status conference to discuss the next step forward, as we had for other issues. I mean, we have a list of them. That's how we went to each step is the court would have a status conference and we'd say, okay, we're going to do this now. And following that, and not long following that, we did move to amend the complaint. The court, as I say, for the first time gave an order giving 10 days to do this, which suggests to me that they felt it was not already too late. And we complied. I mean, this was the first time frame we were given, and we filed within 10 days. But then, you know, the court's main argument here was not about weeks. Their main argument was we waited 14 months, and that was simply not correct. I mean, they were looking at a huge time frame that really didn't exist, and I think that was the basis for the position they took. They simply misunderstood how standing worked when it comes to being a plaintiff in a patent case. Okay, Mr. Cooper, we're out of time. We'll give you three minutes for rebuttal. Mr. O'Sullivan. Good morning. May I please record? John O'Sullivan from Hogan Levels. I'm here with my colleague, Paige Converato, for the cross-appellant PCNY. My co-counsel, Mr. Feller, as we discussed with the clerk, will handle the non-infringement issues. I'm going to cover the other issues. So you're supporting the denial of the motion for leave to amend, correct? Yes, sir. So why isn't the cross-appeal on the infringement issue frivolous? Because how can the district court issue a decision on the merits of infringement when it's missing a necessary party, which is the co-inventor? Yes, I think that— You don't even address that in the brief, right? Well, that's the product of that challenge not having been made by our adversary. No, but you're missing a co-inventor here. How can you say the district court should have rendered a decision on the merits of the infringement question when, by your own view, the court does not have before it the necessary parties? I think that Your Honor's choice of words is the right one, necessary, not indispensable. And I think the D.N. Nippon case, the HR Technologies case, say that an order like the order we got on summary judgment, which is not as favorable as the order sought. We ended up with a without prejudice dismissal, nothing to show for 10 years of litigation. We presented a winning summary. How—you know, you couldn't have brought a declaratory judgment action without naming both owners of the patent. You know, there may be unusual circumstances where it's not possible to name the owners, but that's not the situation here. And in those situations, maybe the failure to join a necessary party would be excused. The law on that's not clear. But here, you know, you could have named—you could have brought the other owner into the case, and that was necessary if you were going to get a declaratory judgment or a judgment of non-infringement, right? Well, just to be fair on the timeline, at the time we moved for summary judgment, according to everything we were told by the plaintiff, the Chinese technician was a phantom, unknowable, unfindable. But right now, at the end of this case, the person was identified, the patent had been amended, the certificate of correction had been named this other party, the Chinese inventor's rights had been assigned to another corporation, and that corporation, the owner, the co-owner of the patent, is not a party. By your own argument, it's not a party. How could you possibly suggest that the district court had any authority under those circumstances to render a judgment of non-infringement? For the reason I stated, under the case law, that exact circumstance where you have some missing player, but depending on the relationship between that player and who you have, you don't lose subject matter jurisdiction. It's not constitutional standing. It's this necessary versus indispensable party analysis. Whoever Pangaea is or the Chinese—that person, at least going back a few years, has sat on the sidelines. They haven't moved to intervene. They never moved to intervene. The introduction of that party to the case— In what case have we said that the district court can render a judgment on the merits where it's missing a necessary party that could be added to the case? There are a couple. I would say Dia Napan—and, again, I apologize this wasn't briefed. It wasn't raised. We didn't sort of correspond to brief it. But a Federal Circuit case, Dia Napan is 142F3-1266, and it distinguishes—it has a sub and a parent, but it finds the missing party that has some bundle of patent rights. The missing party is not indispensable, and it does sort of a virtual representation analysis. So it says they're not here, but— Yeah, yeah, but that's a sub and a parent. What cases like this one where you have two separate parties? Well, the alignment right now is not clear. It seems like the rights were conveyed for nothing. This party showed up with the same lawyer and didn't seek to intervene on its own or in some independent way, seek to join. I mean, it's unclear whether it was— Are you talking about Pangaea? Yes, sir. Okay. But assuming that even if the district court had jurisdiction, you're asking us to review a denial of a summary judgment motion, and the court never rendered any type of judgment on the merits. It was denied on the basis of the inventorship issue. So you're asking us to rule on it, on a denial of summary judgment, and we don't have jurisdiction to do that. There's no finality here. Two responses. I believe there is finality because the case is now over. I grant you if in the middle of the case we were trying to appeal denial of a summary judgment, it's an interlocutory order. There would be no jurisdiction. The case is ended, but the case never—the case is not resolved on the merits. It was resolved on—the summary judgment motion was granted on the basis of the dismissal for lack of inventorship. Right. The way we think you can talk about why you should try to resolve this to bring some closure to the case, the dismissal without prejudice, we say, should have been with prejudice because we should have won on summary judgment. I understand that you can say that a denial of summary judgment isn't on the merits, but if summary judgment was appropriate as a matter of law, meaning as a matter of law, the case should have been dismissed at that moment, the right adjudication would be on the merits. Well, but to follow up on Judge Reina's question, the typical rule, as I understand it, is that even when the denial of the summary judgment motion is brought up on a cross appeal, as in this case, the courts of appeals have typically said, no, there's no jurisdiction. Now, there are occasions in which the courts have said, well, in limited circumstances, where, for example, the question is purely a question of law or there appears to be a very close relationship between the legal issue that's up on the main appeal and the legal issue that would be brought up on the cross appeal denial from the denial of summary judgment, the courts have said, well, you know, because the case is before us, we'll go ahead and decide this, it's either pinned in appellate jurisdiction or under the authority of Section 2106. But I don't see this case as falling within those exceptions. What is your basis for saying this case, unlike most cases, we should be addressing the denial of summary judgment? Three reasons. First of all... And this wasn't briefed for some reason. I don't know why, but... This issue of whether you should even reach the summary judgment, it wasn't challenged, I think, at least from the perspective of the appellant. It's waived because it's really a credential standing issue at all, if anything. It's not constitutional standing, but to address your... No, I'm not talking about standing here. I'm talking about our jurisdiction to address the denial of a summary judgment motion, which normally is not within our appellate jurisdiction. So I would say the unique circumstances of this case is we ended up litigating that on the merits. There's a fully developed record. Mr. Feller will address the merits, but the argument is going to be there are three or four places where there's just a failure of proof. You have everything the district court had. It's easy to find. But that's true in every case in which there's a denial of summary judgment, and then a disposition on another ground, which leads to an appeal and a cross appeal. I don't see what distinguishes this case from the run-of-the-mind cases. I would say, at least from a sort of doing justice perspective, the unfairness of ten years of litigation and they refile tomorrow. Well, you should have made a different argument and not appealed from the denial of summary judgment. What you should have argued was the district court, in your view, was obligated to go ahead and resolve the non-infringement question, which presumably, since he denied summary judgment, would have resulted in a trial. And that's the error that the district court made. But you haven't even made that argument. Yes, our argument is that on the record that was there and is here. I don't think you can, as Judge Rand and Judge Bryson have been saying, there are all sorts of cases saying you can't appeal the denial of the summary judgment. You could fault the district court for not resolving the infringement question if you had proper parties, but you don't. I'm going to just, because I have to cede to my colleague. No, you don't get the right to sit down when we're questioning. I do think we're in the limited circumstances that Judge Bryson mentioned because of this unique situation. It's not like every case where you end up with this dismissal with prejudice. And again, there obviously are some cases that get to the appellate court where you want to do a light touch and let everybody back at the trial level do things in the first instance. It's a heavy lift we're asking for, but it's a 10-year-old case. That issue, which is going to come up on a brand new case in six weeks. Well, if you wanted to resolve on the merits, you should have agreed that the motion for leave to amend be granted and the co-inventor, co-owner be added to the case. But you don't want that. Yes, sir. Obviously, the client wants to end the case. It's 10 years. We thought under the discretion the judge had, the abuse of the Rule 16 deadline meant that case had to end. And that configuration of parties who was there then couldn't start a new 10 years in. But we also didn't want to leave that 10 years without, you know, we made two summary judgment motions. We won one of them. We should have won the other one. You don't end the case by filing a cross-appeal. Pardon? You don't end the case by filing a cross-appeal. Well, the relief sought would be to direct that summary judgment be granted in our favor on the non-infringement issue. Suppose we disagreed with you and felt that the district court had properly denied summary judgment. What happens with the case then? We're supposed to send it back for a trial on infringement? What are we supposed to do? No, I think if you disagreed with us, it still ends the other way. That case ends the other way. Your decision would be the only decision that would discuss what happened in this case. Whatever happened, the denial or the incorrect adjudication of that summary judgment is not going to transfer to case number two. So our decision on the summary judgment, if it went against you, would be purely advisory, which would inform the district court if a new case was filed as to how he should resolve a new motion for summary judgment? I don't think it's purely advisory. Again, you have jurisdiction to reach it. Well, how about that? What's the best case you've got for the proposition that we have jurisdiction to reach that, given the general principle that we discussed before, that denials of summary judgment are not appealable with the exceptions that we discussed before? What's your best case? Let me put it this way. What's your best case for the proposition that this falls within one of the limited exceptions to that rule? I think the HR technologies case, in terms of reaching it, that's the one case we said in the jurisdictional section of our brief. What's that case say? That case says, and it's dealing with a missing party as well, but it says if, after a lot of unrelated activity, you end up with a dismissal without prejudice, as opposed to prejudice, you don't get deprived of an appeal on the notion that you won. You've suffered some injury that you can address at the appellate level. Was that a cross appeal on a summary judgment denial? I believe it was. Yeah, the grievance that the court identified or went with in that case was that this court did find that the district court had the discretion to deny or to dismiss without prejudice, but that shipping out or not addressing and dismissing the counterclaims, which were D.J. counterclaims on the underlying infringement issue, that was improper. But that's not talking about an appeal of a denial of summary judgment. That's arguing that the district court needed to address invalidity issues. Yes, sir. Do you mind if I consult for 30 seconds? It's not brief. So I think there's a case called Scripps, which does stand for the proposition that the final dismissal or disposition of the case calls into question or raises for review all previous orders. That's the general rule that all orders merge into the final judgment, but there's a special principle that applies to summary judgment denials. We've talked about this in some of our cases. I mean, there's a case called Advanced Technologies, and here's what we said in that case. The party has raised a cross appeal challenging the district court's denial of its summary judgment motion on obviousness and anticipation. We lack jurisdiction over the cross appeal because the final judgment rule prohibits a party from appealing a district court's denial of a motion for summary judgment. That sounds like it's this case. Well, the way I would distinguish it is to say that we ended up with a dismissal without prejudice. That order's been challenged. It's on appeal. We say, based on the incorrect disposition of the summary judgment motion, that should have been with prejudice. Yeah, but what you could argue, as I said before, is that the district court should have resolved the infringement question, not to appeal the denial of summary judgment, which isn't properly before us. But you could have said he abused his discretion in not resolving the infringement question, so please send it back for a trial so we can get a final judgment, and then we can appeal from that. But that's not what you asked for. Yes, sir. Again, I think that the basis for the request to reach it is, again, the rule prohibiting interlocutory appeals on denial of summary judgment, it's supposed to prevent multiple trips up and down and multiple piecemeal appeals in the same case. We would say this is the opposite. We're already here. This issue, we say, you have the record to deal with and is never going to get reviewed if we end up in a refiled case. There was a moment, we say, in time when this case was ripe for disposition on the merits. Okay. I think we're out of time. We'll hear from Mr. Feller. I'll use my reserve time just for the other issue I didn't get to. Courts indulgent. Well, you guys are going to be out of time. We'll give you one minute on the cross-appeal rebuttal. You're going to address the sanctions question? No, actually, Your Honor, I was going to address the non-infringement arguments and why sending the case back to the district court is a waste of everyone's resources because there is absolutely no evidence in the record that COBRA has presented which would support its claims of infringement. We don't have authority to hear that issue. Well, Your Honor, I think as Mr. O'Sullivan mentioned, the court does not wish to hear arguments on the merits of the cross-appeal. But I do have a question about the sanctions and the timeliness of the sanctions, and that is these cases that you rely on from the Eleventh Circuit are dealing with post-trial motions, not motions for reconsideration. And so why isn't this untimely under the rule because it's a motion for reconsideration, which is directly within the language of the local rule? Well, actually, Your Honor, I think this was Mr. O'Sullivan's question.  Your Honor, the Eleventh Circuit cases on timeliness are dealing with post-trial motions, motions for new trot, right? Not motions for reconsideration. Yes, but under the general law, those are treated the same in terms of finality. Well, the question is what interpretation to give to the local rule where it says regardless of further review or whatever the language is, if you don't encompass a motion for reconsideration within that language, what meaning does it have, regardless of the prospect or tendency of supplemental review? Well, again, I think the law is well established, and that local rule went on the books in the face of decades of law that says a Rule 59 motion stays, destroys, postpones finality. That's a settled law, and that's the law that this rule went on top of. The rule uses the term final judgment, and you can read all the Eleventh Circuit cases, including the Member First Credit Union case and this Galdames case that we cite. That may clear it. That means you start the clock. What does the language of the rule mean, regardless of the prospect or tendency of supplemental review? Does that mean supplemental review by the district court? I think the best, obviously, there's nothing in the Advisory Committee where the judge and our opposing counsel have proffered. Do you agree that that means supplemental review by the district court? Yes. I think the new word, it used to just say your deadline ran from final judgment, and obviously if that finality was delayed, your clock was delayed. They added not only supplemental review, but the word order. And from what we've seen post the judge's ruling, the example where it seemed to apply was a case where the district court granted summary judgment in an insurance proceeding that has some kind of appraisal thing, and there was an entitlement to fees just based on that act. And without digging into it, the court treated that as an order that started the clock to do the fees, presumably for the reasons we talked about on the other issue, that order could be subject to supplemental review. But all you have, if you're trying to figure out what the 11th Circuit would do, you have one case that has those words in the order and focuses on the traditional meaning of final judgment. I mean, this is a judgment, and it wasn't final at that time, and says you start the clock when the Rule 59 motion is gone. That has to be what it means, and there's no case or authority or commentary that would support the idea that supplemental review destroys the whole concept of finality, or all the law that says... We're in a very strange posture here. You're asking us to construe a local rule that has been applied and with a construction by the district judge from that very district where the local rule was promulgated, probably participated in its promulgation or its amendment. I don't know if he was on the court long enough to go back to the most recent amendment, but in any event, he's the fellow on scene who applies this local rule regularly. We aren't even the reviewing court on a regular basis for that district, and yet we're being asked to say, no, no, Judge Marra, you didn't interpret your own local rule correctly. That seems to be, to use your words, a heavy lift. Well, it is, and obviously, dealing with a local rule, it might be better if it was in the 11th Circuit, but this is the case that's before you and where it's gone up the first time. A lot of people rely on these rules. You'd probably have to recode the Compki law things if all of a sudden a recon motion or Rule 59 motion no longer deferred finality. Well, it does for other purposes, but the question is, does the specific language of this rule change that otherwise general principle with respect to Rule 59? You're absolutely right that typically Rule 59 will postpone the finality of a judgment until the Rule 59 motion is resolved for purposes of appellate proceedings. And fee proceedings. Well, that's the question. Is it true for fee proceedings if the local... Let me back off. Suppose that this local rule said supplemental review including Rule 59 applications. There'd be no doubt that you'd lose. Although you wouldn't leave final in before judgment earlier in the sentence. Many times district judges enter judgments and they call them final judgments and then somebody files a Rule 59 and it becomes not final for purposes of appeal. So I don't know that you get much mileage out of the word final judgment. But what I'm bothered by is I have the same question that Judge Dike had, which is what does supplemental review mean if it doesn't include something like an application for a motion for reconsideration under Rule 59? And I think the best answer is it means something that happens with an order that's not a final judgment. Under this rule, you have final judgments and we know how those work and we know how timing works on that. It also talks about orders that might trigger a right to fees and orders like a summary judgment order... A motion for reconsideration of an order would be treated differently in your view from a motion for reconsideration of a judgment? I don't know if you label it that. First of all, the answer is probably yes because it's not a final judgment. It's a different category and at least there you're in fair game talking about supplemental proceedings. But certainly in the one example we found in the case law with the summary judgment order, the court dealing with that magistrate and then went up to the district court judge said, I've got a summary judgment order, fees are potentially awardable here, and there was a challenge on timeliness and he said the date started, the 60 days started at issuance of that order. But the only case you have from the 11th Circuit has supplemental review. It has that version. It's different because it involved post-trial motions for a new trial, which you can see would be a different situation than a motion for reconsideration because it could change the whole outlook of the case. It could change the judgment. Motions for reconsideration generally don't change the judgment. So whatever the meaning of this rule is, it seems to me, there's a pretty strong argument that it at least says that motions for reconsideration aren't going to toll the time. I would argue the contrary. Maybe in practice reconsideration motions aren't as successful as post-trial motions, although those have often low probability of success as well. But in either case, you could completely flip the outcome or you could certainly alter the basis on which somebody could get fees or not, and they're both pretty tight timeframe motions. So the policy reasons for waiting for the post-trial motion, I think, are not really different than waiting for the Rule 59 motion, and the rule doesn't distinguish. Well, the Guantanamo case didn't address the supplemental review issue. I went back and looked at the briefs, actually only one brief in that case, and it didn't mention supplemental review. So it's not clear to me that the Galdamas case was focused on the issue that we have here. But there's another case from the 11th Circuit, the Clark case. Are you familiar with that one? Clark against Housing Authority of the City of Alma, which says construing a rule with at least somewhat similar language coming from a different district and referring to a prior decision. We held that for purposes of the local rule, post-judgment motions or a subsequent appeal do not affect in any manner the time limits contained in the local rule. So there the court is saying with a rule that says you file after the judgment within a certain number of days, it doesn't matter if there are subsequent motions made. And it seems to me if anything, that case seems to say that it's least open to question whether the local rule should be read as applying in a situation where there's a motion for reconsideration. Well, I think, look, with different words you could clear this up in different ways. I think the one case you do have is Galdamas. I will grant you they didn't spend time discussing this, but it's the rule and the supplemental review. I say it's a rule, but is Galdamas a published case? It's not a published case under the 11th Circuit rules. It's not precedent. It's persuasive. But again, if you're trying to. It's persuasive. Yes. Okay, but it's not binding. It's not authoritative. And you're asking us to reverse the judge on the standard of review of abuse of discretion? Our position is it's a clear misreading of the rule to breathe into supplemental review the notion that final. That's not the standard of review, a clear misreading. It's an abuse of discretion. It is generally abuse of discretion on an attorney's case motion. No, that is a standard review, abuse of discretion. Yes, sir. We would argue that within that general standard of review, when you have just a rule to read and a case to read, you're in a similar position to the district judge. I recognize what you said about him being there. But again, the Galdames case has the current version of the rule, the rule that we say Judge Marra read incorrectly and still does the traditional Rule 59. But it doesn't quote the relevant part of the rule. It doesn't, but it's part of the same sentence that was before the court. I mean, that's kind of a sea change to say that we used to start the clock after denial of Rule 59 motions. We've done that for years. We have a lot of cases that say that. That's all out the window now, because this unarticulated supplemental review covers anything, including things that we used to say actually stay finality and breathe life into defying the term final judgment that's really in the rule. That's a big change. And it's a big change that would affect a lot of people calculating time.  Again, we're not asking, recognizing this in the basic discretion standard. We are still in the area where it is a legal procedural matter, and I think it's an issue of some importance, and this is the first time it came up. Okay. All right. I think we're out of time. Thank you, Mr. Russell. We'll give you a minute for your rebuttal. Mr. Kubler, you have three minutes here. Well, I guess I would speak to the sanctions issue. Certainly I agree with what's been said so far by the court, and I would say with this Galdame's case, they don't talk about the language added to the rule  which predated the addition of that language, and it appears it simply went unnoticed. I mean, there's no indication. You know, the magistrate judge in the Galdame's case just cited members first, and then it went up the ladder and was affirmed, and it doesn't appear anyone thought to argue that the rule changed during this time period between members first and added this language. And so the judge was correct in finding it not persuasive. So that's our position. Also. Do you know if this, and you're from that district, I think, do you know if this particular local rule has ever been applied either in this manner or in the manner that your opposing counsel urges before? Has there been any litigation of this issue as to the local rule other than this case? We have not found any. So I'm certainly not aware of anything that was construed as they suggest, but I just don't think we found anything on that. But it was added after the members first case, and the members first case is what Galdame's relied upon for authority. They didn't seem to miss the fact that the rule changed during that period and this language was added and there was no reference to this language. And there again, the judge simply found it not persuasive for that reason, which we feel was appropriate. And we have the Federal Circuit case, which cites Z.K. Marine, the local district court case, that said that on a motion for reconsideration, you don't use that to add new authority. And it says, yeah, for reconsideration, it should not be a vehicle to present. That doesn't have anything to do with what happens here. We're not barred from looking at a case because it wasn't cited below. Well, I understand, Your Honor. I'm just saying that they had misused this as a mechanism to raise the case. But in any case, I guess that's pretty much where we stand. We feel that the judge was correct, that this language, supplemental review, does need motions for reconsideration because, you know, I can't find any other explanation for it, and it was added. And certainly this judge has been on the bench many years, and as you correctly pointed out, he may have even been involved in the formulation of this added language. I mean, he's been on the bench for decades. So this was done maybe 10 years ago. So in any case, we feel that he was very familiar with the rule and he made a correct interpretation of it. And, you know, this is his local rule, and that's how he felt it should be construed. Okay. Thank you, Mr. Cooper. Your Honor, can I have five seconds just to respond to the judge? Yeah, yeah. I gave you a minute. You have a minute. Okay. Staying with your question, obviously we searched extensively to find the case you were looking for. The one case we found, and it doesn't go to the broader question, but it goes to the question of what the heck supplemental review means. It's this case. It's not published. We can provide a copy to the court. It's called RVAT v. Scottsdale. It's a Southern District of Florida 2016 case. Magistrate Judge Turnoff and Judge Gales was the judge, and that was the case where – Does it have a Westlaw site? It doesn't. I mean, at least what we were able to print up here. But we can submit a copy to the court today. We'll get it for you. Yeah, you can submit it to the court. I think what I learned this morning – Yes, sir. – is Westlaw doesn't publish his magistrate opinion. Lexis does, but we'll get an opinion. Westlaw publishes many magistrate opinions. Maybe it hasn't published this one. What's the year of this? 2016. And I'm not going to say that it says more than it does. What it does say, it does apply the 60 days, and it does trigger it from an order, and it does use the supplemental review. The words are there. So at least, again, I'm offering it as an example of what those words could apply to. Well, wait. Does it hold that the time runs from the denial of a motion for reconsideration? No, because that wasn't the issue in the case. As I said, it's an example of – in other words, if you were to agree with us that the words final judgment mean what they always have meant and that that judgment is not final if there's a Rule 59 review, then the obvious question and fair question is, well, then what is supplemental review if it's not a Rule 59 motion? It seems like supplemental review at the district court. Right, right. And this court, the court you're talking about, said what about that question? All it did is it dealt with an example of something that's not a judgment that's waiting to be final. It's a summary judgment order. There was a question of whether a fee application based on that was timely, and the court said I'm going to count the 60 days under this rule that says you've got 60 days from the order irrespective of supplemental review or appeal. So, again, it's an – there's sparse authority here. It doesn't seem very helpful on this issue. Not to you, anyway. Well, I think it is – I think the question of whether – what those words would apply to is a natural one and an important one, and that's an example. But there is research. There's not another case where a judge did what Judge Mehra did here. So there's not an affirmative ruling saying – and you'd think it would come up more – that's really the change we say it is in terms of how you calculate time. You'd think it would come up more often, but we haven't done that case. Okay, thank you. Thank all counsel. The case is submitted.